IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CR. NO.  98-00624 ACK |
| Plaintiff/Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRIGITTE RIEDL | ) | |
| | ) | |
| Defendant/Petitioner. | ) | |
| | ) | |

ORDER DENYING PETITION FOR WRIT OF ERROR CORAM NOBIS


On November 24, 1999, Brigitte Riedl ("Defendant") was convicted by a jury of one count of possession with intent to distribute cocaine, two counts of aiding and abetting the distribution of cocaine, one count of distributing cocaine, and five counts of money laundering.  The jury additionally found by special verdict that nine properties owned by Defendant were involved in the money laundering offenses and were subject to forfeiture to the United States.

On December 20, 1999, Defendant filed a Motion to Set Aside Forfeiture.  After hearing oral argument, the Court denied Defendant's Motion on January 7, 2000, finding that the forfeiture was not grossly disproportional to the gravity of Defendant's offense.  The Court noted, however, that it would reconsider the issue at the time of Defendant's sentencing, and

ordered that the subject properties not be sold prior to sentencing.

On January 31, 2000, the Court issued a Preliminary Order of Forfeiture pursuant to 18 U.S.C. § 982(a)(1).  The Order authorized the United States Marshals Service to seize and take possession of the nine properties implicated in the money laundering offenses pursuant to 21 U.S.C. § 853(g), as incorporated by 18 U.S.C. § 982(b)(1).

Defendant's sentencing, originally scheduled for March 13, 2000, was continued numerous times.  On August 21, 2000, Defendant moved the Court to reconsider her Motion to Set Aside Forfeiture, again arguing that forfeiture of her properties constituted an excessive fine.  On July 26, 2001, after hearing oral argument and expert testimony, the Court sentenced Defendant to sixty-six months imprisonment, followed by three years of supervised release.  On August 13, 2001, the Court issued a Final Order of Forfeiture.  On that same day, the Court issued an Order Denying Defendant's Motion to Set Aside Forfeiture as an Excessive Fine under the Eighth Amendment, denying Defendant's motion for reconsideration.  Defendant appealed that order to the U.S. Court of Appeals for the Ninth Circuit.

On September 10, 2001, Defendant filed a Motion for Stay of Final Order of Forfeiture Pending Appeal.  On October 11, 2001, the Court denied that motion.

2

On November 20, 2003, the U.S. Court of Appeals for the Ninth Circuit affirmed this Court's order denying Defendant's motion to set aside the forfeiture, finding that the forfeiture "was not grossly disproportional to [Defendant's] offense" and Defendant "was sufficiently involved and culpable to negate a charge of sentencing entrapment or manipulation." See United States v. Riedl, 82 Fed. Appx. 538, 540-541 (9th Cir. 2003).

According to documents provided to this Court by Defendant (and not disputed by the Government), an Immigration Court judge ordered that Defendant be removed from the United States to Austria because of her convictions in this Court.  The Board of Immigration Appeals affirmed the decision and Defendant was deported to Austria on May 24, 2004.

On January 18, 2006, approximately four and one-half years after her sentencing and the final order of forfeiture, Defendant filed a Petition for Writ of Error Coram Nobis ("Petition") with this Court pursuant to the All Writs Act, 28 U.S.C. § 1651(a).  In the Petition, Defendant asserts that two fundamental errors underlie her money laundering convictions and the related forfeiture.  First, Defendant argues that the money laundering statute under which she was convicted, 18 U.S.C. § 1956(a)(3)(B), is constitutionally void for vagueness as applied to Defendant's conduct.  See Petition at 15; Reply at 10. Second, Defendant argues that the evidence at trial did not

3

satisfy the statutory requirement that the money laundering affected interstate commerce.  <u>See</u> Petition at 27; Reply at 12. Defendant seeks the following relief: (1) declaration that the money laundering statute, 18 U.S.C. § 1956(a)(3), is unconstitutional; (2) invalidation of the money laundering convictions; and (3) rescission of the Final Order of Forfeiture.

On February 23, 2006, the Government filed an Opposition to the Petition ("Opposition").  On March 13, 2006, Defendant filed a Reply.  The Court finds that no hearing is warranted in this matter because the motions, files, and records of the case conclusively show that Defendant is not entitled to coram nobis relief.  <u>See</u> <u>United States v. Taylor</u>, 648 F.2d 565, 573 (9th Cir. 1981) (where motions, files, and records of the case conclusively show that defendant is entitled to no relief, no hearing is required on petition for writ of error of coram nobis); <u>see also</u> Petition at 1 ("Ms. Riedl is not requesting an evidentiary hearing, as all the facts necessary to support the petition are contained in the underlying criminal case."); Opposition at 19 (requesting the Court to act "without hearing").

## **STANDARD**

The writ of error coram nobis provides a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody.  <u>See</u> <u>Estate of McKinney v. United States</u>, 71 F.3d 779, 781 (9th Cir. 1995).  Specifically, the writ

"provides a remedy for those suffering from the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors." See id. (quoting United States v. Walgren, 885 F.2d 1417, 1420 (9th Cir. 1989)) (internal quotation marks omitted).

Although Federal Rule of Civil Procedure 60(b) expressly abolishes the writ of error coram nobis in civil cases, this extraordinary writ still provides a remedy in criminal proceedings where no other relief is available and sound reasons exist for failure to seek appropriate earlier relief.  See Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987); see also United States v. Morgan, 346 U.S. 502, 505-506, n.4 (1954) (holding that district courts may issue the writ under the All Writs Act, 28 U.S.C. § 1651(a)).

To receive coram nobis relief, a petitioner must demonstrate four factors: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." Hirabayashi, 828 F.2d at 604; accord, McKinney, 71 F.3d 779, 781.  "Because these requirements are conjunctive, failure to meet any one of them is fatal."  See Matus-Leva v. United States, 287 F.3d 758, 760 (9th Cir. 2002).

See also Morgan, 346 U.S. at 511 (coram nobis relief is available
to challenge the validity of a conviction "only under
circumstances compelling such action to achieve justice").

## DISCUSSION

The Court will apply each of the four factors for coram
nobis relief to the facts of this case.

**A.     A More Usual Remedy Is Not Available**

A petitioner satisfies the first requirement for coram
nobis relief by establishing that he is not in custody and, as a
result, not eligible for habeas relief or relief under 28 U.S.C.
§ 2255.   See United States v. Kwan, 407 F.3d 1005, 1012 (9th Cir.
2005).   The Government concedes that Defendant "is no longer in
custody, and thus, she has satisfied the first requirement" that
a more usual remedy is not available.   See Opposition at 7.

**B.     No Valid Reason Exists for the Delay in Attacking the
         Conviction**

In lieu of a specific statute of limitations on
petitions for writ of error coram nobis, "courts have required
coram nobis petitioners to provide valid or sound reasons
explaining why they did not attack their sentences or convictions
earlier."   See Kwan, 407 F.3d at 1012-1013.   "[C]ourts have
denied relief on this ground where the petitioner has delayed for
no reason whatsoever, where the respondent demonstrates
prejudice, or where the petitioner appears to be abusing the

writ" by attempting to "re-litigate claims or circumvent
procedural bars."  Id., 407 F.3d at 1013.  Here, the Court finds
that the Petition must be denied because Defendant has not
demonstrated any valid reason for the delay in challenging her
conviction and the equitable doctrine of laches bars relief on
the insufficiency of the evidence claim.

**1.    Defendant Has Presented No Valid Reason for the Delay**

In the instant case, Defendant has provided no valid
reason for why she did not challenge the constitutionality of the
money laundering statute and/or the sufficiency of the interstate
commerce evidence at trial, during the extensive post-trial
briefings and arguments before this Court, or in her appeal to
the Ninth Circuit Court of Appeals.  Defendant's argument that
"[b]ecause [she] was deported to Austria, her ability to find
competent counsel willing to review her case and pursue her legal
remedies under coram nobis took some time" does not explain why
she did not challenge her conviction prior to her deportation.
See Petition at 3.

Nor does Defendant's other excuse - that "her 66-month
incarceration period, her diminished capacity, and the fact that
the Government had seized nine of her real properties worth $2.7
million prevented her from attacking the convictions earlier" -
provide any legitimate reason to explain why Defendant did not
challenge her conviction earlier.  See Petition at 3-4.  The

7

Court can see no reason why a period of incarceration would
prevent Defendant from challenging her conviction.  Nor can the
Court see how any diminished capacity[1/] or loss of property[2/]
would prevent her from challenging her conviction where she was
represented by counsel before this Court and in her appeal to the
Ninth Circuit Court of Appeals.[3/]  In short, Defendant has
provided no sound reason for why she did not raise the claims to
this Court or the Court of Appeals during the trial, sentencing,
hearings regarding forfeiture, or appeal phases.  See Maghe v.
United States, 710 F.2d 503, 503-504 (9th Cir. 1983) (per curiam)
(coram nobis relief denied where defendant demonstrated no sound
reason for waiting to challenge conviction, even where he
provided motive for seeking relief at the late date).

        Nor has Defendant provided any sound reason for why she
did not raise these challenges in a motion pursuant to 28 U.S.C.
§ 2255, prior to her deportation.  See Reply at 5-7 (recognizing
that Defendant could have filed a motion pursuant to § 2255 prior

---

[1/] The Court previously found that Defendant's mental
incapacity was of a limited nature.  See United States v. Riedl,
164 F. Supp. 2d 1196, 1201 (D. Haw. 2001).

[2/] Not all of Defendant's properties were seized by the
Government.  Defendant's net worth, exclusive of the forfeited
properties, was estimated at over $861,000 prior to her
sentencing.  See Petition, Exhibit A at ¶ 109.

[3/] Defendant has retained multiple attorneys over the course
of her defense, including David Klein, Alan Ellis, Richard J.
Troberman, Wayne Anderson, Myles S. Breiner, J. Thomas Logan, and
William W. Stewart; in addition to her current counsel.

to her deportation).  Although the Court may speculate as to what
sound reasons Defendant may have had not to file a § 2255 motion
prior to her deportation, it will not so speculate where
Defendant has provided no explanation.  Cf. Kwan, 407 F.3d 1005,
1013 (defendant who sought the advice of counsel and pursued
legal remedies to address the collateral consequences of his
conviction during the period of the delay, but whose counsel
misled him by advising him that there was little chance his
conviction would cause him to be deported, provided reasonable
explanation for not challenging his conviction earlier).

        Additionally, Defendant's sufficiency of the evidence
claim is barred because it should have been raised on direct
appeal.  See United States v. Keane, 852 F.2d 199, 202 (7th Cir.
1988) ("Claims that could have been raised by direct appeal are
outside the scope of the writ [of error coram nobis]."); Lipscomb
v. United States, 273 F.2d 860, 865 (8th Cir. 1960 ("where the
question sought to be litigated could be raised on appeal, the
writ [of error coram nobis] will not lie"); Martinez v. United
States, 90 F. Supp. 2d 1072, 1075 (D. Haw. 2000) (claims that
could have been raised by direct appeal are outside the scope of
the writ of error coram nobis), aff'd, 17 Fed. Appx. 517 (2001);
accord United States v. Montalvo, No. 92-15668, 1993 WL 181381,
at *1 (9th Cir. May 27, 1993) ("Claims that could have been
raised by direct appeal are outside the scope of the writ [of

9

error coram nobis].").[4/] See also Marshall v. United States, 576
F.2d 160, 162 (9th Cir. 1978) (non-constitutional issues are
improper for collateral review where no resulting fundamental
defect would lead to a complete miscarriage of justice).  But see
United States v. Tucor Int'l, Inc., 189 F.3d 834 (9th Cir. 1999)
(granting coram nobis relief on basis of statutory interpretation
but failing to address the issue of whether the petition should
have been denied on the basis that the claim could have been
raised on a direct appeal).[5/]

### 2. Doctrine of Laches Bars Relief on the Insufficiency of the Evidence Claim

A petition for writ of error coram nobis is subject to
the equitable doctrine of laches, which bars a claim if
unreasonable delay causes prejudice to the government.  See
Telnik v. United States, 24 F.3d 42, 45, 47 (9th Cir. 1994).  For
laches to bar a petitioner's claim, the government must first
make out a prima facie showing of prejudice as a result of the

---

[4/] In accordance with U.S. Ct. of App. 9th Cir. Rule 36-3,
the Court is not relying on this or any other unpublished opinion
cited herein.

[5/] The fact that Defendant did not raise her constitutional
claim on direct appeal does not, by itself, bar the claim because
the U.S. Court of Appeals for the Ninth Circuit has held that
"constitutional claims may be raised in collateral proceedings
even if the defendant failed to pursue them on appeal."  See
United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984).
See also Telnik v. United States, 24 F.3d 42, 45 (9th Cir. 1994)
(petition for writ of error coram nobis is a collateral attack on
a criminal conviction).

defendant's delay in bringing the challenge to the conviction.
Id. at 47.  In making a determination of prejudice, the effect of
the delay on both the government's ability to respond to the
petition and the government's ability to mount a retrial are
relevant.  Id. at 48.  If the government meets its burden of
demonstrating prejudice, the burden of production of evidence
then shifts to the petitioner to show either that the government
actually was not prejudiced or that the petitioner exercised
reasonable diligence in filing the claim.  Id. at 47.

Here, the Government alleges that it has been
prejudiced by Defendant's "failure to challenge her money
laundering convictions on direct appeal and her four and one-half
year delay in filing this Petition."  See Opposition at 11.  The
Government cites to the potential unavailability of necessary
witnesses, evidence, and trial materials.  Id.  The Government
alleges that it would be "extremely difficult and expensive to
reassemble the prosecution's case" because witnesses' memories
have faded, one witness has died, the prosecution team has been
dismantled, and the two primary investigators have retired.  Id.

The Government has demonstrated prejudice to its
ability to respond to the sufficiency of the evidence claim in
the Petition.  For example, the Government's inability to access
its trial materials and exhibits for purposes of its response to
the Petition precludes the Government from identifying specific

exhibits that may have proved the interstate commerce element
that Defendant is now challenging as insufficiently proved.  For
example, a cashier's check or an application for a cashier's
check (both admitted as evidence at trial) may contain some
language suggesting that First Hawaiian Bank is involved in
interstate commerce; however, unavailability of trial exhibits
prevents the Government from reviewing those documents and making
any appropriate argument here.[6/]

        In response to the Government's demonstration of
prejudice in its ability to respond to the Petition, Defendant
has not shown either that the government actually was not
prejudiced or that Defendant exercised reasonable diligence in
filing the claim.[7/]

        While the Government has demonstrated prejudice in its
ability to respond to the sufficiency of the evidence claim in
the Petition, it has not demonstrated prejudice to its ability to
mount a retrial, because no retrial would be appropriate in this
case even if the Court were to grant the Petition.  If the Court

---

        [6/] The Government has not demonstrated prejudice to its
ability to respond to the void-for-vagueness constitutional
challenge because opposition to the constitutional challenge does
not require analysis of exhibits or other trial documents in the
same manner that is necessary for opposition to the insufficiency
of the evidence claim.

        [7/] Defendant's arguments for why the Government was not
prejudiced in responding to the Petition go to whether
Defendant's delay was justified, and as addressed in section B(1)
above, are without merit.

were to find the statute unconstitutionally vague, the Government
could not seek to re-prosecute Defendant under that
unconstitutional statute (and the Government has not alleged that
it could or would seek to prosecute Defendant under any
alternative statute).   Similarly, if the Court were to find that
there was insufficient evidence of interstate commerce to support
the money laundering convictions, double jeopardy would bar a
retrial on those money laundering counts.   See United States v.
Boulware, 384 F.3d 794, 809-810 (9th Cir. 2004) ("a challenge to
the sufficiency of the evidence implicates a defendant's rights
under the Double Jeopardy Clause"); United States v. Gergen, 172
F.3d 719, 724-725 (9th Cir. 1999) (defendant who successfully
challenges a conviction for insufficiency of the evidence is
entitled not only to a reversal of his conviction but also to a
judgement of acquittal).

        For these reasons, the Court finds that while the
Government has not been prejudiced in its ability to mount a
retrial, the Government has been prejudiced in its ability to
respond to the Petition's sufficiency of the evidence claim.
Therefore, the equitable doctrine of laches bars Defendant from
obtaining relief on the sufficiency of the evidence claim.

C.   **Adverse Consequences of the Money Laundering Convictions
     Exist**

          The Ninth Circuit Court of Appeals has repeatedly

reaffirmed the presumption that collateral consequences flow from

any criminal conviction, and that the government carries the

burden of disproving this presumption.  See United States v.

Walgren, 885 F.2d 1417, 1421 (9th Cir. 1989); Hirabayashi, 828

F.2d at 606.  In this case, the Government has not sought to

disprove this presumption of collateral consequences.  See

generally Opposition (not disputing that adverse consequences

exist).

          With Defendant's money laundering convictions, the jury

returned a special verdict that nine properties owned by

Defendant were involved in that money laundering and were subject

to forfeiture.  As a consequence, the Court ordered the nine real

properties, with a total net value to Defendant of approximately

$1.25 million, to be forfeited by Defendant.  See United States

v. Riedl, 164 F. Supp. 2d 1196 (D. Haw. 2001).  The Court agrees

with Defendant that deprivation of approximately $1.25 million is

an adverse consequence of the convictions from which she is

continuing to suffer.  See Petition at 4.[8/]  The Court finds

_____

          [8/] Defendant does not assert that her deportation was an
adverse consequence of her money laundering conviction,
presumably because the decision to deport her was based also on
her drug related convictions, which she is not challenging in the
Petition.

14

"adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III." Hirabayashi, 828 F.2d 591, 604.

**D.   No Fundamental Error Exists**

Defendant asserts that two fundamental errors underlie her money laundering convictions and the related forfeiture. First, Defendant argues that the money laundering statute under which she was convicted, 18 U.S.C. § 1956(a)(3)(B), is constitutionally void for vagueness as applied to Defendant's conduct. See Petition at 15; Reply at 10.  Second, Defendant argues that the evidence at trial did not satisfy the statutory requirement that her money laundering affected interstate commerce.  See Petition at 27; Reply at 12.  The Court has already found that Defendant may not raise these claims at this late date because she has not presented a sound reason for the delay and relief on the insufficiency of the evidence claim is barred by laches.  See, supra, section B.  Nonetheless, even assuming that Defendant were permitted to raise these challenges at this late date, the Court finds no merit to her arguments.

**1.   The Statute Is Not Unconstitutionally Vague**

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and

15

discriminatory enforcement." <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983).  The most important aspect of the doctrine is the second requirement: that the legislature establish minimal guidelines to govern law enforcement.  <u>Id.</u> at 357-358; <u>see also</u> <u>United States v. Kaufmann</u>, 985 F.2d 884, 896 (7th Cir. 1993).

Defendant challenges 18 U.S.C. § 1956(a)(3)(B) as unconstitutionally vague as applied to the facts of this case.[9/] To be convicted under this money laundering sting operation statute,[10/] the Government had to prove that Defendant had the

---

[9/] The vagueness of a statute that does not threaten First Amendment interests is examined in light of the facts at hand, so that the statute is judged on an as-applied basis.  <u>See</u> <u>Maynard v. Cartwright</u>, 486 U.S. 356, 361 (1988).  Defendant is not arguing that the statute threatens First Amendment interests; rather, Defendant is arguing that the statute is void for vagueness as applied to the facts at hand.  <u>See</u> Reply at 10.  <u>See also</u> <u>United States v. McLamb</u>, 985 F.2d 1284, 1290 (4th Cir. 1993) (limited restraints on defendant's associational interests and ability to pursue lawful employment arguably imposed by 18 U.S.C. § 1956(a)(3) are not constitutionally cognizable, so that void-for-vagueness review is limited to determination of whether application of the statute to the conduct at hand violated the void-for-vagueness doctrine).

[10/] 18 U.S.C. § 1956(a)(3)(B) provides:

Whoever, with the intent -
to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity
conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both.  For purposes of this paragraph . . . the term "represented" means any representation made by a law enforcement officer or by

specific intent to conceal or disguise the nature, location,

source, ownership, or control of property she believed to be the

proceeds of unlawful activity; that Defendant conducted or

attempted to conduct a financial transaction involving that

property; that representations about the property were made by

law enforcement officers (or those acting under their direction);

and that those representations relate to specified unlawful

conduct enumerated in § 1956(c)(7).[11/]  See 18 U.S.C. §

1956(A)(3)(B); Kaufmann, 985 F.2d at 896; see also United States

v. Loehr, 966 F.2d 201, 204 (6th Cir. 1992).

    The Court finds that a person of ordinary intelligence

can understand what conduct is prohibited by the statute.[12/]  Of

------------------------------------------------

                another person at the direction of, or with the
                approval of, a Federal official authorized to
                investigate or prosecute violations of this section.

    [11/] 18 U.S.C. § 1956(c)(7) defines the term "specified
unlawful activity."

    [12/] Defendant argues that she is not a person of ordinary
intelligence and therefore the statute is void for vagueness as
it applies to her.  See Petition at 25.  Defendant fully argued
the issue of her own diminished mental capacity in the underlying
criminal case, and the Court will not permit her to re-litigate
the issue in this Petition.  See Martinez v. United States, 90 F.
Supp. 2d 1072, 1075 (D. Haw. 2000) (coram nobis relief is not
available to litigate issues already litigated) (citing Klein v.
United States, 880 F.2d 250, 254 n.1 (10th Cir. 1989) and United
States v. Montalvo, 1993 WL 181381 (9th Cir. May 27, 1993)); see
also United States v. Riedl, 164 F. Supp. 2d 1196, 1201 (D. Haw.
2001) (finding that this Defendant suffers from diminished mental
capacity but that she was capable of and did have the requisite
intent, willingness, and ability to launder drug proceeds).
Moreover, the test for vagueness in an as-applied challenge looks
at whether a person of ordinary intelligence, not a person of

17

course, under the statute, an ordinary person will not know that
undercover law enforcement officers are making the
representations.  See Kaufmann, 985 F.2d at 896.  "However, the
statute provides adequate notice that if [defendant] believes the
property is the proceeds of specified unlawful activity, he
incurs a high risk of liability if he conducts a financial
transaction with the intent to conceal its ownership."  Id., 985
F.2d at 896.[13/]

─────────────────

defendant's intelligence, would have recognized that the conduct
in question was criminal.  See, e.g., McLamb, 985 F.2d at 1291
(the first requirement of the Kolender test is "that an ordinary
person be able to recognize the conduct in question as
criminal").

     [13/] The Court is not persuaded by Defendant's arguments that
the law enforcement officer must identify herself to defendant as
an officer or that the money given to the defendant must actually
be the proceeds of unlawful activity.  See Petition at 17-18, 25.
"The money laundering statute forbids certain acts performed with
a given specific intent, and where the legislature confines
itself to the criminalization of acts with a required mens rea
and does not attempt to outlaw a status or condition, neither the
Constitution's ban on cruel and unusual punishment nor its
guarantee of due process permit the court to second-guess the
legislature's determination that the proscribed conduct is
harmful.  See McLamb, 985 F.2d at 1291-1292.  Additionally, "the
mere facts that the government employs subterfuge to catch the
criminal and that the crime can only be committed with the
cooperation of a governmental actor are not constitutionally
damning."  Id. at 1292.  Finally, the Court has already found
that the Government did not engage in sentencing manipulation or
entrapment in the underlying criminal case, and the Court will
not permit Defendant to re-litigate the issue in this Petition.
See Martinez v. United States, 90 F. Supp. 2d 1072, 1075 (D. Haw.
2000) (coram nobis relief is not available to litigate issues
already litigated) (citing Klein v. United States, 880 F.2d 250,
254 n.1 (10th Cir. 1989) and United States v. Montalvo, 1993 WL
181381 (9th Cir. May 27, 1993)); see also United States v. Riedl,
82 Fed. Appx. 538, 540-541 (affirming district court's finding

Here, the Government presented evidence that undercover officers repeatedly represented that the money with which they proposed to purchase Defendant's properties was proceeds of unlawful drug dealing activity, and any ordinary person would have recognized it as such.  Indeed, Defendant tried to conceal from bank employees how and where she obtained the money, stating for example that it was her own money that she obtained through a sale of property in Austria.  See Petition at 20.  The statute clearly and unambiguously describes the conduct that is prohibited, and an ordinary person such as Defendant could understand that prohibition.  See Kaufmann, 985 F.2d at 896 (18 U.S.C. § 1956(a)(3)(B) is "unambiguous" and "an ordinary person" would be able to "understand what conduct is prohibited;" concluding "that § 1956(a)(3)(B) is not void for vagueness"); McLamb, 985 F.2d at 1291 (18 U.S.C. § 1956(a)(3) is not unconstitutionally vague as it applies to defendant's conduct because, in part, "any ordinary person [would] be able to recognize the conduct in question as criminal"); Loehr, 966 F.2d 201, 204 (18 U.S.C. § 1956(a)(3)(B) "is clear and applies to anyone who has the requisite intent to engage in the conduct as defined in the statute;" concluding that § 1956(a)(3)(B) is not void for vagueness); see also United States v. Tolley, No. 98-

---

that Defendant was sufficiently involved and culpable to negate a charge of sentencing entrapment or manipulation).

10503, 1999 WL 958488, at *1 (9th Cir. Oct. 19, 1999) ("18 U.S.C.
§ 1956(a)(3)(B) defines the conduct it prohibits with sufficient
definitiveness" and is not unconstitutionally vague) (internal
quotations and citations omitted).[14/]

        The Court also finds that the statute is not written in
a manner that would encourage arbitrary or discriminatory
enforcement, as applied to the facts of this case.  See Kaufmann,
985 F.2d at 896 (18 U.S.C. § 1956(a)(3)(B) is "unambiguous" and
"not written in a manner that would encourage arbitrary and
discriminatory enforcement;" concluding "that § 1956(a)(3)(B) is
not void for vagueness"); McLamb, 985 F.2d at 1291 ("[n]o obvious
danger of arbitrary enforcement is presented" by 18 U.S.C. §
1956(a)(3); concluding the statute is not unconstitutionally
vague as it applies to defendant's conduct); Loehr, 966 F.2d 201,
204 (concluding that 18 U.S.C. § 1956(a)(3)(B) is not void for
vagueness); see also Tolley, 1999 WL 958488, at *1 ("18 U.S.C. §
1956(a)(3)(B) defines the conduct it prohibits with sufficient
definitiveness to establish minimal guidelines to govern law
enforcement" and is not unconstitutionally vague) (internal
quotations and citations omitted).  The Court finds that the
statute provided law enforcement officers in this case with
sufficient guidelines so as to prevent "a standardless sweep."

_____

        [14/] In accordance with U.S. Ct. of App. 9th Cir. Rule 36-3,
the Court is not relying on this or any other unpublished opinion
cited herein.

See <u>Kolender</u>, 461 U.S. 352, 358.

Accordingly, the Court finds that 18 U.S.C. § 1956(a)(3)(B) is not void for vagueness.

**2.   The Interstate Commerce Element Was Proven at Trial**

In a money laundering prosecution under 18 U.S.C. § 1956(a)(3)(B), a nexus with interstate commerce is both a jurisdictional requirement and an essential element of the offense.  <u>See</u> <u>United States v. Bazuaye</u>, 240 F.3d 861, 863 (9th Cir. 2001) (quoting <u>United States v. Ladum</u>, 141 F.3d 1328, 1339 n. 2 (9th Cir. 1998)) (nexus with interstate commerce is jurisdictional requirement and essential element of any money laundering prosecution).  The statute requires that the defendant "conduct[] or attempt[] to conduct a <u>financial transaction</u> involving property represented to be the proceeds of specified unlawful activity."  18 U.S.C. § 1956(a)(3)(B) (emphasis added).

The term "financial transaction" is defined as:

> (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the <u>use of a financial institution</u> which is engaged in, or the activities of which affect, <u>interstate or foreign commerce</u> in any way or degree.

18 U.S.C. § 1956(c)(4) (emphasis added).  "Incidental involvement or use" of a financial institution engaged in interstate commerce is enough to satisfy the financial transaction requirement.  <u>See</u>

21

United States v. Oliveros, 275 F.3d 1299, 1303 (11th Cir. 2001)
(FBI's withdrawal of cash from bank before giving cash to
defendant, and FBI's deposit of checks received from defendant
into bank constituted sufficient involvement of a financial
institution to affect interstate commerce); see also Bazuaye, 240
F.3d at 864-865 (interstate commerce need be involved only to
"minimal degree").

        Defendant admits that the evidence demonstrated that
she took cash to First Hawaiian Bank and had it converted into
cashier's checks and that she gave the cashier's checks to the
escrow company as deposits for real estate transactions.  See
Petition at 28.  She argues, however, that the Government did not
prove that these transactions were "financial transactions"
within the meaning of the statute because, she argues, the
Government did not introduce evidence that First Hawaiian Bank or
the escrow company were engaged in interstate commerce.  See
Petition at 27-28; Reply at 12.[15/]

------------------------------

        [15/] The Court notes that undercover officers represented to
Defendant that the money involved in the money laundering
transactions came from drug activities in Las Vegas, Nevada.
Additionally, when Defendant purchased cashier's checks, she told
the bank teller that the money (which Defendant thought was drug
money from Las Vegas) was proceeds from the sale of her property
in Austria.  However, the Court has not found any case law
indicating that a representation, made by an undercover officer
or a defendant, that the money came from a transaction made
outside of the state would be enough to satisfy the interstate
commerce requirement; and therefore the Court does not place any
weight on those representations.

The Court finds that the Government presented
sufficient evidence that Defendant conducted "financial
transactions" within the meaning of the statute when she took
cash to First Hawaiian Bank and had that cash converted into
cashier's checks, and when she deposited those checks with
Independent Escrow Service, because "processing checks through
normal banking channels involves financial institutions which are
engaged in interstate commerce to [the] minimal degree" required
by the statute.  See Bazuaye, 240 F.3d at 865 (defendant's use of
normal banking channels, by use of a check, is sufficient to
satisfy the interstate commerce element of money laundering
offense); see also id. at 864-865 (where stipulated facts
regarding credit card companies make no mention of interstate
commerce and never use the word "bank," judge is not required to
ignore common sense in finding that use of a check issued by a
credit card company involves the use of normal banking channels
and thus involves interstate commerce); cf. Oliveros, 275 F.3d at
1303 (FBI's withdrawal of cash from bank before giving cash to
defendant, and FBI's deposit of checks received from defendant
into bank constituted sufficient involvement of a financial
institution to affect interstate commerce); United States v.
Mejia, No. 97-50353, 1998 WL 895380, at *6 (9th Cir. Dec. 17,
1998) (purchase of a cashier's check had an effect on interstate
commerce because the cashier's check was purchased at a bank

23

engaged in interstate commerce).

A bank teller who issued a cashier's check to Defendant testified that the bank had to file a "currency transaction report" with the IRS, reporting the transaction in which Defendant purchased a $320,000 cashier's check, because "anything over $10,000 has to be reported to the IRS." See Nov. 16, 1999 Trial Transcript at 22-23. Another bank employee testified that a currency transaction report was "required by the federal government" for Defendant's purchase of a cashier's check because such a report must be filed for any monetary transaction exchange over $10,000. See Nov. 4, 1999 Trial Transcript at 132. A copy of at least one currency transaction report, from one of Defendant's cashier's checks, was introduced at trial. Id. This testimony and evidence that First Hawaiian Bank was required to (and did) report Defendant's cashier check purchases to the federal government/IRS supports the jury's conclusion that the transactions involved the use of a financial institution which had, at least, a de minimis effect on interstate commerce. See United States v. Leslie, 103 F.3d 1093, 1022 (2d. Cir. 1997) (use of word "federal" in a bank's name "supports a jury's conclusion that the transaction involved the use of a financial institution which has, at least, a de minimis effect on interstate commerce").

Moreover, the transactions that form the basis of the money laundering convictions were all part of the overall real estate transactions in which Defendant was attempting to transfer title of her real properties to the undercover officers.[16/]   The Court finds that the transfers of the real property (though never fully consummated because of Defendant's arrest before closing) affected interstate commerce because they were part of the interstate real estate market in Hawaii.   See, e.g., Russell v. United States, 471 U.S. 858, 862 (1985) (rental of real estate affects interstate commerce); United States v. Evans, 285 F.3d 664, 671 (8th Cir. 2002) (purchase of real estate affects interstate commerce for purpose of money laundering statute).[17/]

---

[16/] The Court notes that in considering Defendant's appeal, the Ninth Circuit Court of Appeals made the following findings, among others.  It found that "Riedl was well aware of the source of the money being used to purchase her property; she encouraged the undercover officers to convert their illegal proceeds into safe and stable sources of value.  Moreover, Riedl actively planned and helped structure the money laundering transactions. The forfeiture therefore was not grossly disproportional to Riedl's offense." Riedl, 82 Fed. Appx. 538, 540.  It also found that "It was Riedl who initiated most of the early discussions with the undercover officers about the sale of her properties; she repeatedly encouraged the officers to purchase real property from her to enhance their financial security, and she expressed no concern when told (numerous times) that the source of the money to be used for the purchases was 'drug money.'" Id., at 540-541.

[17/] The Court notes that there may have been other evidence of interstate commerce introduced at trial, but because the Government was prejudiced in its ability to respond to the Petition, it has not presented that evidence in its opposition. See, supra, section B(2).

Accordingly, the Court finds that the interstate commerce element of the money laundering convictions was sufficiently proven at trial.

### CONCLUSION

The Court denies Defendant's Petition for Writ of Error Coram Nobis because (1) no valid reason exists for why Defendant did not attack the conviction earlier, (2) the equitable doctrine of laches bars Defendant's claim for insufficiency of the evidence, and (3) no fundamental error underlies Defendant's conviction because the money laundering statute is not void-for-vagueness and the interstate commerce element was sufficiently proven at trial.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 21, 2006.



Alan C. Kay
Sr. United States District Judge

United States v. Riedl, Cr. No. 98-00624 ACK; Order Denying Petition for Writ of Error Coram Nobis.